Oral Argument- November 13, 2013
UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

APPEAL NO: 08-3033
(Consolidated with 10-3108 & 11-3031)

JOSEPH JONES, et al.,
    Appellants

v.

UNITED STATES OF AMERICA
    Appellee

## Appellants' Response to Government's Surreply

Appellants, by counsel, respond to the Government's Surreply.

## Introduction

"The founders of the American Republic were not prepared to leave [criminal justice] to the State, which is why the jury-trial guarantee was one of the least controversial provisions of the Bill of Rights."[1] Through the power to acquit or find lesser offenses, common law juries "indirectly checked" the Crown's power to inflict punishment.[2] "That this history was in the Framers' minds is beyond cavil."[3] And that principle guides this appeal, which contends that constitutional

---

[1] *Apprendi v. New Jersey*, 530 U.S. 466, 498 (2000) (Scalia, J., concurring).

[2] *Jones v. United States*, 526 U.S. 227, 245 (1999).

[3] *Jones*, 526 U.S. at 247.

1

issues are implicated when the federal government seeks to use acquitted conduct as the tail that wags the dog of a lesser offense.  When the presumptive Guidelines range called for by the offense of conviction is ratcheted upwards by applying a higher range governing an offense of which the defendant was acquitted, the Fifth Amendment due process clause and the Sixth Amendment jury trial guarantee come into play.  In many cases, it is no answer to say that the judge could have given the defendant the statutory maximum, because the presumptive guidelines range – which may not be mandatory but which surely is more than just precatory – will be less than that, sometimes much less.

This case is a glaring example.  The offense of conviction involved very small "street level" drug sales, with presumptive Guidelines sentences of around five years.  However, the judge explicitly accepted the prosecutors' request to find by a lesser standard of evidence facts that the jury had declined to find beyond a reasonable doubt – namely, Appellants' participation in a "conspiracy" to distribute over 1.5 Kg of crack cocaine.  The district court then did what the Sentencing Guidelines, whose constraints were endorsed in *Peugh v. United States*,[4] instructed it to do.  Appellants' so-called "Relevant Conduct" was calculated as if they had committed the conspiratorial offense and distributed over

---

[4]     133 S. Ct. 2072 (2013).

1.5 Kg of crack cocaine. Their presumptive Base Offense Level and Guidelines range that would govern further sentencing proceedings became dramatically higher than the one normally called for. The ultimate result was no different than would have been the case had Appellants been convicted on the conspiracy charge.

That process would have astonished the Framers, who intended that "[i]f the defendant preferred the common-sense judgment of a jury to the more tutored but perhaps less sympathetic reaction of the single judge, he was to have it."[5] They surely would have looked askance at the notion that a judge could, at a prosecutor's behest, nullify a jury's decision to acquit a defendant and then punish that defendant as if he had committed the offense for which he just had been acquitted. Five years' deprivation of liberty would have been a significant price to pay for having been convicted of a street-level sale of crack cocaine. Fifteen to eighteen years' imprisonment, explicitly based on findings of an offense that the prosecutors couldn't prove to a jury, one carrying a far higher Guidelines range, is at odds with the constitutional interests at stake, as those values most recently were articulated in *Alleyne v. United States.*[6]

As we shall explain, the Guidelines, although officially deemed advisory, are

---

[5] *Duncan v. Louiisiana*, 391 U.S. 145, 166 (1968).

[6] 133 S. Ct. 2151 (2013).

nevertheless sufficiently mandatory that they must be applied to the crime of conviction and not some other crime – at least where the defendant stands convicted of an offense that carries a Guidelines range less than the "other crime" that a judge might find.

Only at the very periphery was Appellants' punishment facially attributable to the relatively modest crime of conviction. Instead their lengthy prison terms were based on what amounted to a guilty verdict pronounced by a "lone employee of the state"[7] who altered the prescribed Guidelines punishment for the offense of conviction so as to aggravate it greatly.[8] Those were not just "any" factual determinations that might have influenced judicial discretion.[9] They were the driving force behind the sentences.

## Response

The Government's Surreply asserts that *Peugh* and *Alleyne* permit the practice Appellants have challenged to continue unabated. It commends as an example the Second Circuit's recent decision in *United States v. Figueroa*.[10] But as

---

[7] *Blakely v. Washington*, 542 U.S. 296, 314 (2004).

[8] *Alleyne,* 133 S. Ct. at 2162.

[9] *Id.,* 133 S. Ct. at 2163.

[10] 2013 WL 3745905, 2013 U.S. App. LEXIS 14490 (2nd Cir., July 18, 2013) (cited at Government Surreply 6).

we will show, *Figueroa* is not pertinent to this case, and the sentences here are precluded by *Peugh* and *Alleyne*'s holdings and logic.

      A. Figueroa *does not support the position taken by the Government.*

The Government invokes *Figueroa* for the proposition that acquitted conduct can be considered in sentencing if the ultimate sentence doesn't exceed the "'bounds that the law has prescribed . . . .'"[11] It's not so simple. In a passage surprisingly omitted by the Government, *Figueroa* pointed out that in imposing a 2 year sentence for conspiracy to distribute crack (here we are talking of 15-18 year sentences for a lesser offense of conviction) the district judge "made clear that it was not punishing Jones for his role in the [uncharged] murder, but that Jones's involvement was simply one relevant consideration under 18 U.S.C. § 3553(a)."[12]

That is far removed from these proceedings, where Appellants' lengthy sentences are based on judge-made "findings" that they had committed the serious conspiracy offense of which the jury had acquitted them.[13]

---

[11]  Government Surreply 6 (quoting *Alleyne,* 133 S. Ct. at 2163).

[12]  *Figueroa,* 2013 U.S. App. LEXIS 14490, at *3. A decision cited by *Figueora* is *United States v. Broxmeyer*, 699 F.3d 265 (2nd Cir. 2012). The dissent in *Broxmeyer* observed that in sentencing situations such as these, "vexing constitutional questions" can arise. *Id.* at 302 (Jacobs, C.J., dissenting).

[13]  Jones Sentencing 3, 20-23 (App. III-Tab 47), Thurston Sentencing 18-22 (App. III-Tab 49), Ball Sentencing 30-37 (App. III-Tab 50).

### B. *The sentences are inconsistent with* Peugh *and* Alleyne.

*Peugh* reaffirms that federal sentencing should track, if not mirror, the Guidelines that result from the offense of conviction. Specifically, *Peugh* instructs us that the Guidelines have "force as the framework for sentencing" and "remain the starting point for every sentencing calculation in the federal system."[14] This means that "the post-*Booker* sentencing regime puts in place procedural 'hurdle[s]' that, in practice, make the imposition of a non-Guidelines sentence less likely."[15] The "advisory" Guidelines "nonetheless impose a series of requirements on sentencing courts that cabin the exercise of [judicial] discretion."[16] As a result, "[c]ommon sense indicates that in general this system will steer district courts to more within-Guidelines sentences."[17]

*Alleyne* prohibits judges from raising statutorily-prescribed mandatory minimum sentences based on facts not found by a jury beyond a reasonable

---

[14] *Peugh*, 133 S. Ct. at 2083.

[15] *Peugh*, 133 S. Ct. at 2083-84 (citation omitted).

[16] *Id.,* 133 S. Ct. at 2084.

[17] *Id. See also United States v. Caso,* _ F.3d _, 2013 U.S. App. LEXIS 14624, *23 (D.C. Cir. July 13, 2013) ("'[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range.'") (quoting *Peugh,* 133 S. Ct. at 2083), *id.* n. 8 ("'Moreover, a district court's "[f]ailure to calculate the correct Guidelines range constitutes procedural error."'") (quoting *Peugh,* 133 S. Ct. at 2080).

doubt.[18] And while *Alleyene* states, in a passage that the Government seizes upon, that "broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment,"[19] that does not mean that the exercise of discretion in sentencing will *never* violate the Constitution.

To understand why the factual determination that Appellants conspired to distribute over 1.5 Kg of crack cocaine was a quintessential finding that had to be made by the jury, one must focus on what the Sixth Amendment jury trial right was intended to do. *Alleyne* makes that abundantly clear, beginning with the majority's opening statement, that "[t]he touchstone for determining whether a fact must be found by a jury beyond a reasonable doubt is whether the fact constitutes an 'element' or 'ingredient' of the charged offense."[20]

The *Alleyne* majority further stated:

> When a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury. *It is no answer to say that the defendant could have received the same sentence with or without that fact.*[21]

That theme resonates in Justice Breyer's *Alleyne* concurrence that "the best

---

[18] *Alleyene*, 133 S. Ct. at 2162-63.

[19] *Alleyene*, 133 S. Ct. at 2163 (cited at Government Surrepy:6).

[20] *Alleyne*, 133 S. Ct. at 2158

[21] *Id.,* 133 S. Ct. at 2162 (emphasis added).

answer to JUSTICE SCALIA's implicit question in *Apprendi* – what, exactly, does the 'right to trial by jury' guarantee? – is that it guarantees a jury's determination of facts that constitute the elements of a crime."[22]

At the core, this case presents the specter of the state successfully calling on the court to punish Appellants as if they had committed a more serious crime for which they were acquitted. No one gainsays the district courts' broad discretion to determine facts that may support a given sentence, or to have considered the prosecution's claims as affecting the presumptive range for the offense of conviction -- in Ball's case, a sale of 11 grams of crack to an informant. But "broad discretion to decide what facts may support an enhanced sentence. . . does not shield a sentencing system from the force of our decisions. [I]f . . . the judge must find an additional fact to impose the longer term, the *Sixth Amendment* requirement is not satisfied."[23] And that is the gist of what happened here. But for the judge-made conspiracy finding, the Sentencing Guidelines ranges for simple distribution of crack would have been between 51-71 months for Ball, 27-33

---

[22] *Id.,* 133 S. Ct. at 2167 (Breyer, J., concurring).

[23] *Cunningham v. California,* 549 U.S. 270, 290 (2007) (emphasis in the original). *See also Ring v. Arizona*, 536 U.S. 584, 588-89 (2002) (Sixth Amendment "does not permit a defendant to be 'expose[d] . . . to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone.'") (citation omitted).

8

months for Thurston and 33-41 months for Jones.[24] The trial court's finding of a conspiracy involving 1.5 Kg of crack drove the applicable Guidelines range to multiples of the high end of the otherwise-applicable range.

Consider, then, the foregoing constitutional principles within a system of reasonableness review of sentencing decisions. The Government has never disputed that in the federal system, defendants don't get 15-18 year sentences for a street-level sale of crack cocaine.[25] The sentences that *were* given to Appellants, however, depended on judge-created findings that wagged the dog, to repeat our earlier metaphor.[26] And the enhancements that then were imposed depended even further on that same underlying finding of a conspiracy. Ball, for example, didn't pick up his so-called Leadership enhancement merely from his single sale of 11 G. of crack to the informant Season Wood, in which no one else participated. But a buyer-seller relationship is not a conspiracy and one cannot conspire with a

---

[24] Appellants' Main Brief: 9 & n.9.

[25] Appellants' Main Brief: 9-10 & n.11, 49 n. 143. The empirical evidence published by the Sentencing Commission has relevance when it comes to deciding constitutional questions, as most recently confirmed by *Peugh*. 133 S. Ct. at 2084 (citing United States Sentencing Commission, 2011 SOURCEBOOK OF FEDERAL SENTENCING PROCEDURES (16TH ed). & *Final Quarterly Data Report, Fiscal Year 2012*).

[26] See *McMillan v. Pennsylvania*, 477 U.S. 79, 88 (1986) (observing that the statute at issue in that case was not a "sentencing tail" wagging the offense "dog").

9

government informant, either.[27] Instead the enhancement was based on the judge-made conspiracy finding – an offense rejected by the jury. The judge's determinations thus were not just "any" facts. Rather, a judicial factual finding punished Appellants not because of the crime for which they were convicted but for a distinct and more serious crime with differing elements, even though they were acquitted of that charge.

The exceptionally heavy sentences handed down here would not pass reasonableness review had they been imposed for the simple distribution offense.[28] But while the Guidelines are officially advisory, they are sufficiently mandatory that they must be applied, which requires courts to adhere to the Sentencing Commission's definition of "Relevant Conduct." The trial judge could not have imposed these heavy terms without finding "facts" that the jury didn't determine, and then using those facts to place the defendants in a far higher range of imprisonment.

Left conspicuously unanswered by the Government is the simple question posed in Appellants' reply, which is to suppose that a law stated that the judge

---

[27] *United States v. Baugham*, 449 F.3d 167, 171-72 (D.C. Cir. 2009) (discussing law differentiating buyer-seller relationships from conspiracy; citing cases); *United States v. Iennaco,* 893 F.3d 394, 397 n.3 (D.C. Cir. 2000) (government agent cannot be co-conspirator).

[28] See *Gall v. United States*, 552 U.S. 38 (2007); *Rita v. United States,* 551 U.S. 338 (2007).

could sentence a defendant to five years' imprisonment upon a jury conviction of distribution of crack cocaine.  We postulated a scenario where that law also allowed the judge to hand down a twenty year sentence by finding by a preponderance – or by clear and convincing evidence -- that the transaction occurred as part of a conspiracy, which was the "real offense," even if the defendant had been acquitted of such a charge.  We pointed out that the Sixth and Fifth Amendment would not allow that, and that the Guidelines, which are administrative issuances, could not indirectly allow something that a statutory scheme could not accomplish.[29]  Nothing in *Alleyne* endorses the notion that the Sixth (and Fifth) Amendments are toothless in such a scenario.

> B. *In any event,* Alleyne *does not dispose of Appellants' "as-applied" claim.*

Finally, the Government exuberantly proclaims that *Alleyne* "puts the final nail in th[e] coffin" of the as-applied theory.[30]  That is far from correct.  Appellants' reply brief explained that the Government's Opposition had selectively quoted from Justices Scalia and Thomas's *Rita* concurrence to distort what was stated in

---

[29]  Appellants' Reply:5-6.

[30]  Government Surreply:7.  The Government erroneously states that Appellants' Reply cited the *Alleyne* opinion in discussing the as-applied theory. *Id.* Actually Appellants cited Justice Breyer's concurrence.  Appellants' Reply: 20 n. 47.

their opinion.[31] The Government continues down that path here and points to no specific language in *Alleyne* stating that the Court repudiated this doctrine.

And the very notion of that occurring doesn't make sense. Had *Alleyne* done so, then one would have expected the author of the majority opinion, Justice Thomas, to have made that point. After all, his concurrence with Justice Scalia in the *Rita* opinion established the as-applied theory in the first place.[32] Nor did Justice Scalia, who joined the dissenters in *Alleyne,* state that the as-applied theory had been rejected by the Court.[33] Since neither of them wrote anything of the sort, much less stated that they had reconsidered their thinking and found it wanting, the Government's report of the as-applied doctrine's demise is exaggerated.[34]

## Conclusion

The *Peugh* and *Alleyne* decisions further confirm that Appellants' sentences cannot withstand Fifth and Sixth Amendment review. Appellants' convictions for a small offense resulted in their severe punishment for supposedly committing a far

---

[31] Appellants' Reply: 23-24.

[32] *Rita,* 551 U.S. at 370-74 (Scalia & Thomas, JJ., concurring).

[33] *Alleyne,* 133 S. Ct. at 2167-2172) (Roberts, C.J., Scalia & Kennedy, JJ., dissenting).

[34] Frank Marshall White, "Mark Twain Amused," *New York Journal*, (June 2, 1897) (available at http://en.wikiquote.org/wiki/Mark_Twain) (last accessed August 27, 2013).

more serious offense, in the face of the jury's verdict of acquittal. And since judges instruct juries that each count should be considered separately in deliberations, jurors almost surely believe that defendants don't get sentenced for charges for which they are acquitted. In a way, then, the jurors also are misled. Such consequences for exercising the right to stand trial by jury cannot be desirable or just.

                                              Respectfully submitted,

*/s/ Stephen C. Leckar*  
Stephen C. Leckar, #281691  
1850 M St., NW  
Suite 240  
Washington, D.C. 20036  
202.742.4242  
Counsel for Antwuan Ball

*/s/ Jonathan Zucker*  
Jonathan Zucker, #384629  
Patricia A. Daus, #412174  
1350 Connecticut Ave., NW  
Suite 202  
Washington, D.C. 20036  
202.624.0784  
Counsel for Desmond Thurston

*/s/ Anthony D. Martin*  
Anthony D. Martin, #362537  
Maryland Trade Center, III  
7501 Greenway Center Drive  
Ste 460  
Greenbelt, MD 20770  
301.220-3700  
Counsel for Joseph Jones

                     (Appointed by the Court)

## Certificate of Service

The foregoing was served this 28th day of August, 2013 by electronic filing.

                    */s/Stephen C. Leckar*_____  
                    Stephen C. Leckar